PERSON & WEIDHORN, INC., ET AL. *v.* UNITED STATES

**No. 6080.**—Invoices dated Havre-Villa, Belgium, April 2, 1938, etc.
Certified April 2, 1938, etc.
Entered at New York, N. Y., April 21, 1938, etc.
Entry No. 844417, etc.

(Decided December 28, 1944)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the plaintiffs.
*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

OLIVER, Presiding Judge: The appeals for reappraisement herein listed on attached schedule A were consolidated for trial.

It has heretofore been held as to merchandise substantially similar in all material respects to the merchandise herein involved that there was no foreign value as that value is defined in section 402 (c), Tariff Act of 1930, and the record in the case so holding (*United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. 131, C. A. D. 262) was incorporated in the present case (exhibit 1).

Upon the trial counsel orally stipulated as follows (Record 3, 4):

* * *. It is further stipulated and agreed that all of the material facts, circumstances, and conditions of sale surrounding the purchase and sale of the merchandise bought, both for home consumption and for export to the United States, prevailing at the time of the exportation of the merchandise involved in the said Graham & Zenger, Incorporated, case were present on the dates of exportation of all the merchandise embraced in these consolidated reappraisement cases.

It is further stipulated and agreed that if the court should find that the merchandise is properly dutiable on the basis of the foreign market value on the dates of exportation, that the appraised values correctly represent the foreign market values as defined in subsection C, of section 402, of the Tariff Act of 1930.

It is further agreed that should the court find the merchandise is possibly dutiable on the basis of the export values as defined in section 402, it is agreed that the entered values properly represent the export values as defined in subsection (D) of section 402 of the Tariff Act of 1930, and that in all the cases involving additions made under duress under section 503, of the Tariff Act of 1930, the export values as defined in subsection (D) of section 402, of the Tariff Act of 1930, are the entered values, less any additions made under duress.

It is further agreed that should the court find that there is no statutory export value, nor a statutory foreign market value, at much less than the appraised values, then judgment may be entered in the amount of the appraised values, though the court may find an absence of both a statutory foreign and export values.

The facts in the incorporated case were stated by the Court of Customs and Patent Appeals to be as follows (*Graham & Zenger, Inc.* v. *United States, supra,* at page 132):

All manufacturers of glassware in Belgium were compelled to join the syndicate, which fixed the minimum prices at which the manufacturers had to dispose of their products for home consumption as well as for each of the countries to which glassware was to be exported. Failure on the part of any manufacturer to sell his product at at least the fixed prices resulted in severe penalties, and the manufacturer alone was held responsible for compliance with the price rules.

In the Belgian market every purchaser of glassware was required to set out the purpose for which he sought the product, whether for home consumption or for export to a foreign country. When the manufacturer received an order for glassware to be exported, he would apply to the syndicate for an export license which was made in duplicate, the original being sent by the syndicate to the manufacturer and a copy thereof to the Minister of Economic Affairs at Brussels. The original export license was sent by the manufacturer with the shipment to the port of exportation, where it was taken by the customs officials and sent to the Ministry to be compared with the copy. No glassware could be sold for home consumption except on condition that it was not to be exported.

Glassware purchased for home consumption could be resold at any price, but only for the home market. With respect to glassware purchased for exportation, its purchase price could not be less than the minimum required by the syndicate for the country designated as being the destination of the goods, and it could not be shipped to any other country. There was no restriction as to resale in any foreign country.

The court thereupon held that the restriction on the use of merchandise sold in the foreign market for home consumption created a controlled market and therefore there was no foreign value for the involved merchandise, and affirmed the judgment of the Second Division (Reap. Dec. 5751) which affirmed the judgment of the trial court (Reap. Dec. 5643) holding that the proper basis of value was export value and that such export value was the entered value. The court also noted (p. 133) that "The Government does not contend that, if foreign value is not the proper dutiable basis, the export value is not such basis."

Counsel for the Government now contends that the export value as defined in section 402 (d), Tariff Act of 1930, is not the proper basis of value, claiming that the export market is also controlled and restricted for the reason that shipments could not be made for export until and unless permits were secured permitting such export and then only where the country of exportation was designated and when so designated the merchandise could not be exported to any other country than that designated and named in the permit of exportation,

and that this condition was a limitation upon the freedom of action of the exporter in the country of origin and therefore created a controlled export market.

Three of the appeals for reappraisement involved herein, namely, 131968–A, 137824–A, and 140053–A cover shipments exported from Belgium and imported into the United States prior to the effective date of the Administrative Act of 1938. The balance of the appeals cover shipments exported after the effective date of said act. Inasmuch as the said act amended section 402 (c) of the Tariff Act of 1930, for the purposes of this decision the two groups will be considered separately.

In relation to the cases in the first group, those exported prior to the effective date of the Administrative Act of 1938, I cannot agree with the contention of the Government for the reason that the so-called restriction is simply a compliance with the condition set forth in section 402 (d) of the Tariff Act of 1930, which provides in its definition that export value shall be "the price * * * at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, *for exportation to the United States* * * * ." [Italics supplied.]

As the conditions attending sales for exportation to the United States place no restriction upon the purchaser as to the resale, free use, or dominion over the merchandise and did not confine the sales to selected purchasers, I find no restriction on sales "for exportation to the United States."

As to the remaining appeals for reappraisement, all of which were exported subsequent to the effective date of the Administrative Act of 1938, a different situation exists.

The Administrative Act of 1938 modified section 402 (c) of the Tariff Act of 1930 in the following language:

SEC. 8. Section 402 of the Tariff Act of 1930 (U. S. C., 1934 edition, title 19, sec. 1402) is hereby amended by inserting the words "for home consumption" after the words "freely offered for sale" in subsection (c) * * *.

The above amendment now brings squarely within the definition of foreign value sales or offers for sale of merchandise *for home consumption*. It thus appears that the restriction to home consumption placed upon sales in the home market, which was held in the case of *United States* v. *Graham & Zenger, Inc.*, *supra*, to be such a restriction as to negative the existence of a foreign value, now, by the above amendment, becomes the basis for finding such value.

In the case of *J. H. Cottman & Co.* v. *United States* and *United States* v. *J. H. Cottman & Co.*, 20 C. C. P. A. 344, T. D. 46114, the court had before it the question of sales in the foreign market, "for

home consumption," in determining foreign market value as defined in section 205 of the Anti-Dumping Act of 1921 which so far as pertinent reads as follows:

### FOREIGN MARKET VALUE

SEC. 205. That for the purposes of this title the foreign market value of imported merchandise shall be the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is sold or freely offered for sale to all purchasers in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade for home consumption * * *.

In the *Cottman* case, *supra*, a governmentally controlled monopoly sold phosphate rock, in relation to sales for "home consumption," to farmers in Morocco, who could use it only for their own personal uses, and could not resell or export it, and to superphosphate works, where it had to be used in making superphosphate and could not be sold or exported. In some cases sales were made to farm cooperatives, who resold to the members. The same restrictions about use, however, existed in such sales.

Under these circumstances the court found the foreign market to be restricted and controlled and held that no foreign market value, as defined in section 205 of the Anti-Dumping Act of 1921, existed.

The facts in the present case are distinguishable from the facts in the *Cottman* case, *supra*. There the farmers and superphosphate works, buying directly, and the farmers buying from the farm cooperatives, were compelled to use the merchandise themselves and were prevented from reselling it. In the instant case the original purchaser need not consume the merchandise, neither is he prevented from reselling it. The only restriction is that the merchandise must be for home consumption. The sales or offers for sale in the home market, therefore, are limited only by the condition expressed in the definition of foreign value, section 402 (c), as amended by the Administrative Act of 1938.

On the basis of the record before me, I find as a matter of fact:

(1) That the merchandise in question consists of certain glassware exported from Belgium.

(2) That as to reappraisements 131968–A, 137824–A, and 140053–A the foreign market, at the time of exportation of the instant merchandise, for such or similar merchandise, was a controlled market, and that there was no foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930.

(3) That the proper basis of appraisement for the merchandise involved in reappraisements 131968–A, 137824–A, and 140053–A is export value, as such value is defined in section 402 (d) of the Tariff Act of 1930, and that such values are the entered values.

(4) That as to the balance of the appeals for reappraisement listed in schedule A, the proper basis for appraisement of said merchandise is foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Administrative Act of 1938, and that such values are the appraised values.

Accordingly, I hold as matter of law that the proper values of the glassware involved are as set forth in findings of fact (3) and (4).

Judgment will be rendered accordingly.