(Reap. Dec. 10391)

SAMUEL SHAPIRO & CO., INC., A/C ORLEX DYES & CHEMICALS CORP. ET AL. *v.* UNITED STATES

Entry No. 2737, etc.

(Decided December 10, 1962)

*Eugene R. Pickrell* (*Murray Sklaroff* of counsel) for the plaintiff.

*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the defendant.

WILSON, Judge: These appeals for reappraisement involve the proper value of a certain chemical substance, known as sodium trichloracetate, exported from West Germany between April 30, 1953, and December 29, 1953. Appraisement of the merchandise was made on the basis of foreign value (section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938) at deutsche marks 245 per 100 kilos, less and plus certain items, as noted on the relevant invoices. Protest 282353–K is a remand from C.D. 2036. The plaintiffs herein claim that there is no foreign value for the importation at bar and that this merchandise is properly subject to

appraisement on the basis of export value, as defined in section 402(d) of the said act, at the invoiced United States dollar values, less appropriate nondutiable charges. As appears in the record, the invoiced and entered values are less than the appraised values.

Section 402 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, reads as follows:

SEC. 402.   VALUE.

(a)   BASIS.—For the purposes of this Act the value of imported merchandise shall be—

(1)   The foreign value or the export value, whichever is higher;

\*          \*          \*          \*          \*          \*          \*

(c)   FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Since it is conceded by the parties that the foreign value used as the basis of appraisement, if one existed at the time of exportation, was higher than the export value, for which the plaintiffs contend, the official appraisement must be upheld, unless it is found, as asserted by the plaintiffs, that the foreign market at the time in question was a controlled market and, therefore, could not be used as the basis for appraisement. The real question for determination, then, is whether the facts in these appeals are sufficient to warrant a finding by the court that the market in question was a controlled market which could not be used as a basis for appraisement.

The evidence before the court is entirely documentary. Plaintiffs introduced in evidence affidavits of Hans Andreas Biemer and Helmut Wolf, employees of the exporting company, together with a pricelist for 1953 of the manufacturer of the involved product (plaintiffs' collective exhibit 1). Further affidavits by the parties above referred to, together with a list of export sales, were received in evidence as plaintiffs' collective exhibit 2. The defendant introduced two reports by Government consular officers in Germany, one by William Arthur Helseth, and the other by Charles Thomas Butler, dated, respectively, September 10, 1953, and January 6, 1954 (defendant's collective exhibits A and B). Defendant's collective exhibit A identifies three of the appeals involved herein, namely, reappraisements 259473–A, 259670–A, and 259965–A. Said report, after reciting that the information contained therein was obtained from the books and records of the exporter, states, in part, that no pricelist was issued covering the involved period for export to the United States; that the

identical product is offered for sale for home consumption in Germany; that there are no restrictions of any kind imposed by the manufacturer on the buyers of this product, either as to resale, use, or other disposition. The report further indicates that the pricelist for such goods sold for home consumption is identical to the pricelist attached to plaintiffs' collective exhibit 1, it further appearing that the list prices and discounts given are adhered to in each instance. Defendant's collective exhibit B contains a tabulation of sales for home consumption for the period January 1, 1953, to April 30, 1953 (exhibit A of defendant's collective exhibit B).

The pricelist forming part of plaintiffs' collective exhibit 1 contains the following, respecting the conditions of sale:

IX.   Resale of Patented and Special Preparations.

The products mentioned in this price list may be resold only in unopened, original packages, labeled with our registered trademark.

The resale of all preparations listed in this domestic price list to foreign countries, including free harbors, is not permitted without our express consent. Articles destined for export can be purchased only at prices fixed by us for each individual country.

The purchasers are required to impose upon their customers these same conditions.

There is nothing in the evidence to indicate that the merchandise sold for home consumption was not offered to all purchasers on the same terms. Neither were restrictions imposed upon the buyers as to price of resale or as to whom it might be resold. The only conditions imposed on the buyers were that the merchandise purchased from the manufacturer had to be resold "only in unopened, original packages, labeled with our registered trademark," and that the merchandise listed in the domestic pricelist for sale for home consumption could not be sold to foreign countries, without the express consent of the manufacturer.

The plaintiffs contend that the restrictions above referred to were sufficient to constitute a controlled market. In support of their position, our attention is directed to the holding of the court in *United States* v. *Wm. A. Foster & Co., Inc.* (*Standard Rolling Mills, Inc.*), 34 CCPA 9, C.A.D. 336. The merchandise in the cited case consisted of certain aluminum foil, which admittedly was offered for home consumption. However, the court held such sales were "controlled by a cartel which limited them to certain organizations as well as the use to which the merchandise might be put." The court therein, page 11, observed as follows:

* * * Stated differently, it appears from those exhibits that the purchasers of aluminum foil for home consumption in Germany were limited to "converters" and consumers, and that aluminum foil was not freely offered for sale *to all purchasers for home consumption in Germany*. Furthermore, such sales were restricted in that the purchasers were not permitted to resell. Accordingly,

there is substantial evidence of record to establish that the merchandise in question had no foreign values within the purview of subsection (c) of section 402, *supra*. [Italics quoted.]

Our appellate court, in the *Foster* case, *supra*, stated that "The sole issue before us is whether there is any substantial evidence to support the judgment of the appellate division of the Customs Court holding that the entered values are the export values of the merchandise in question." In the case above cited, it appears that "sales and offers for sale of aluminum foil, manufactured and sold for home consumption in Germany, were restricted not only as to purchasers who might buy, but also as to the use to which the foil might be put." That is not the factual situation now before us. In the instant case, there are no restrictions as to the parties to whom resales may be made, nor as to the prices to be charged upon resale, nor as to the use of the merchandise. The only restriction is that all resales of the product, until it reaches the ultimate consumer, must be made in the original packages bearing the manufacturer's name and trademark. As will be hereinafter pointed out, the forbidding of sales to exporters to be shipped to foreign countries was not sufficient to constitute a controlled market.

In the case of *R. J. Saunders & Co., Inc. (Perry H. Chipurnoi, Inc.)* v. *United States*, 42 CCPA 55, C.A.D. 570, a Canadian manufacturer imposed the condition upon Canadian purchasers that they could not sell the involved merchandise for home consumption, but were limited to sales for export only. This was held, as a matter of law, not to be such a restriction or condition as to create a controlled market rendering evidence of such sales an unsatisfactory basis upon which to predicate establishment of an export value, within the meaning and contemplation of the export valuation statute, section 402(d) of the Tariff Act of 1930. While the stated restriction would exclude consideration of such sales in computing foreign market value, section 402(d) only requires that merchandise be "freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, * * *." It would, therefore, appear that the restriction in the present instance, barring those who purchase for home consumption from reselling in the export market, did not constitute a controlled foreign market.

In the case of *Person & Weidhorn, Inc., et al.* v. *United States*, 14 Cust. Ct. 281, Reap. Dec. 6080, the effect of the amendment of section 402(c), Tariff Act of 1930, in the Administrative Act of 1938, is pointed out. Under section 402(c), prior to the amendment, the court had held, in the case of *United States* v. *Graham & Zenger, Inc.*, 31 CCPA 131, C.A.D. 262, that the restriction barring the resale of goods sold for home consumption into the export trade was sufficient to con-

stitute a controlled foreign market. In the *Person & Weidhorn* case, *supra*, however, the court pointed out:

The above amendment now brings squarely within the definition of foreign value sales or offers for sale of merchandise *for home consumption*. It thus appears that the restriction to home consumption placed upon sales in the home market, which was held in the case of *United States* v. *Graham & Zenger, Inc.*, *supra*, to be such a restriction as to negative the existence of a foreign value, now, by the above amendment, becomes the basis for finding such value. [Italics quoted.]

It seems clear, therefore, under the decided cases, that a restriction placed upon the sale of merchandise for home consumption against resale into the export market does not operate to convert the foreign market into a controlled market.

The only question remaining, therefore, is whether the restriction that the merchandise sold for home consumption can be sold only in the original packages, bearing the manufacturer's name and trademark, is such that it operates legally to convert the foreign market into a controlled market. I am definitely of the opinion that such a restriction does not have that effect. The merchandise was sold to all purchasers, without any restrictions as to use or price. It would seem to be a precautionary practice for the protection of the manufacturer to provide that the merchandise should not be repackaged and sold under somebody else's name, without displaying the manufacturer's trademark.

I am, therefore, of the opinion and hold that there was a foreign market for the merchandise in question at the time of the respective exportations. Further, the plaintiffs, in the case at bar, did not attempt to establish, nor was there shown, a foreign value for the involved merchandise different from the appraised value. Hence, the appraised foreign value for the merchandise, which is presumptively correct (28 U.S.C., section 2633), has not been rebutted. Since the foreign market value was higher than the export value claimed to be controlling by the plaintiffs, it is not necessary to consider whether there was such an export value, because the law specifically provides that where the foreign value is higher than the export value, it is controlling as the basis for appraisement. I, accordingly, hold that the foreign market value for the involved merchandise was such as was found by the appraiser.

Upon the record before me, I find as facts:

1. The merchandise here involved consists of sodium trichloracetate, known as "NaTA," which was exported from Germany by Farbwerke Hoechst Aktiengesellschaft, formerly Meister Lucius & Bruning, between April 30, 1953, and December 29, 1953.

2. That, during the period between April 30, 1953, and December 29, 1953, sodium trichloracetate was not produced in the Federal Republic of Germany other than by the exporter herein involved.

3.   That, at the time of exportation, merchandise such as that now before the court was freely offered for sale and sold for home consumption in Germany by the exporter, designated in paragraph 1 of these findings.

4.   That such merchandise was sold by the above exporter for export to the United States at prices lower than the appraised foreign value.

5.   That the value at which the merchandise was appraised has not been shown to be incorrect, nor have the importers established any other value as the statutory value for such merchandise.

I conclude as matters of law:

1.   That sodium trichloracetate, or "NaTA," was freely offered for sale and sold for home consumption in Germany, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

2.   That the higher foreign value for the involved merchandise must be accepted for valuation purposes in accordance with the provisions of section 402 of the Tariff Act of 1930.

3.   That foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is the proper basis for the determination of the value of the merchandise herein involved and

4.   That such foreign value is represented by the appraised value in each case.

Judgment will be rendered accordingly.